UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SREENIVAS GUTTA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> TRACY RENAUD, <br><br> Defendant. | Case No. 20-cv-06579-DMR <br><br> **ORDER ON DEFENDANT'S MOTION TO SEVER, TRANSFER, AND/OR DISMISS** <br><br> Re: Dkt. No. 14 |

Plaintiffs[1] are 22 foreign nationals who applied for immigrant visa petitions under the immigrant investor visa program ("EB-5 program"). [Docket No. 12, First Amended Complaint ("FAC") at 1.] Plaintiffs allege that Defendant Tracy Renaud, in her official capacity as the Senior Official Performing the Duties of the Director of U.S. Citizenship and Immigration Services ("USCIS"), is delaying adjudication of their visa petitions in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 501 *et seq.* Defendant moves to dismiss, transfer, and/or sever Plaintiffs' claims. [Docket Nos. 14 ("Mot."), 20 ("Reply").] Plaintiffs oppose. [Docket No. 19 ("Opp.").] This matter is suitable for determination without oral argument. Civil L.R. 7-1(b).

For the reasons stated below, Defendant's motion is granted in part and denied in part.

## I. BACKGROUND

### A. EB-5 Program

The EB-5 program allots visas to immigrants who have "invested . . . capital" in a new

---

[1] The 22 Plaintiffs in this action are Sreenivas Gutta, Sarat Babu Annapaneni, Tansha Begur, Nilanjan Das, Najib Khan, Harish Bajaj, Naveen Nadella, Dhanvin Sriram, Samantha Moody, Jitendrakumar Koshti, Rajvir Singh Batra, Arvin Filomeno Pereira, Gulnara Giniyatova, Venkata Sai Krishna Puvvada, Naushad Jamal, Guilherme Cherman Perdigão de Oliveira, Zbigniew Pietrzkiewicz, Peter Pietrzkiewicz, Vladimir Terekhov, Devyani Bansal, Mahesh Chatlani, and Vidula Sharma.

commercial enterprise ("NCE") that will "create full-time employment for not fewer than 10 United States citizens" or foreign nationals authorized to work in the United States, excluding the applicant's spouse or children. 8 U.S.C. § 1153(b)(5). At the times relevant to the petitions at issue in this case, applicants for the EB-5 program were required to invest at least $1,000,000 in a qualifying enterprise unless the project was in a "targeted employment area,"[2] in which case the investment threshold was $500,000. 8 U.S.C. § 1153(b)(5)(B)(ii), (C)(ii); 8 C.F.R. § 204.6(f)(1)-(2) (eff. Dec. 2016).[3]

Applicants can satisfy the EB-5 "job creation" requirement by showing that their investment will directly create full-time positions for at least 10 employees. 8 C.F.R. § 204.6(j)(4)(i). Alternatively, applicants who participate in the EB-5 Immigrant Investor Program (or "Regional Center Program") can demonstrate that their investment is within an approved regional center[4] and that the investment will "create jobs indirectly through revenues generated from increased exports resulting from the new commercial enterprise." 8 C.F.R. § 204.6(j)(4)(iii), (m)(7). Participants in the Regional Center Program may show indirect job creation through "reasonable methodologies," including "multiplier tables, feasibility studies, analyses of foreign and domestic markets for the goods or services to be exported, and other economically or statistically valid forecasting devices which indicate the likelihood that the business will result in increased employment." 8 C.F.R. § 204.6(m)(7)(ii). Multiple investors may aggregate their investments, and one NCE can serve as the basis for multiple EB-5 petitions so long as each investor individually meets the monetary and job creation requirements. *See* 8 C.F.R. § 204.6(g).

Foreign nationals apply for the EB-5 Program using Form I-526, Immigrant Petition by Alien Investor. FAC ¶ 32. Applicants must show by a preponderance of evidence that they are

---

[2] A "targeted employment area" is defined as "a rural area or an area which has experienced high unemployment (of at least 150 percent of the national average rate)." 8 U.S.C. § 1153(b)(5)(B)(ii).

[3] As of November 21, 2019, these thresholds have increased to $1,800,000 and $900,000, respectively. 8 C.F.R. § 204.6(f)(1)-(2) (eff. Nov. 2019). Since each Plaintiff filed an application prior to that date, they may qualify for an EB-5 visa under the lower thresholds. *See* Mot. at 4 n. 4.

[4] A "regional center" is defined as "any economic unit, public or private, which is involved with the promotion of economic growth, including increased export sales, improved regional productivity, job creation, and increased domestic capital investment." 8 C.F.R. § 204.6(e).

eligible to receive an EB-5 visa. 8 U.S.C. § 1361. An approved visa petition is "merely a preliminary step in the visa application process. It does not guarantee that a visa will be issued, nor does it grant [the applicant] any right to remain in the United States." *Tongatapu Woodcraft Hawaii, Ltd. v. Feldman*, 736 F.2d 1305, 1308 (9th Cir. 1984). Once USCIS has approved an I-526 petition, the applicant may apply for two-year conditional lawful permanent resident ("LPR") status. 8 U.S.C. § 1186b(a). The investor can eventually qualify for full, nonconditional LPR status by submitting a petition that demonstrates the investor has "maintained his or her capital investment" for over two years and "created or can be expected to create within a reasonable time ten full-time jobs for qualifying employees." 8 C.F.R. § 216.6(a)(4)(iii)-(iv).

### B. USCIS's Processing Procedures for I-526 Petitions

The Immigration and Nationality Act ("INA") limits the total number of visas available to foreign nationals each year, as well as the number of visas available for nationals of any single country. *See* 8 U.S.C. §§ 1151, 1152. Most visa applications, including the ones at issue here, are considered in the order they are filed. 8 U.S.C. § 1153(e). USCIS formerly processed Form I-526 petitions on a "first-in, first-out" basis. However, in January 2020, USCIS announced that it would "give[] priority to petitions where visas are immediately available, or soon available."[5] Under the new approach, USCIS evaluates the visa availability for a petitioner's country of birth and uses that information, along with "other factors," to determine which Form I-526 petitions should be processed first.[6] The agency stated that the "new operational approach aligns with other visa-availability agency adjudications processes, is more consistent with congressional intent for the EB-5 Immigrant Investor Program, and increases fairness in the administration of the program."[7]

---

[5] *See* U.S. Citizenship and Immigration Servs., *USCIS Adjusts Process for Managing EB-5 Visa Petition Inventory*, https://www.uscis.gov/news/news-releases/uscis-adjusts-process-for-managing-eb-5-visa-petition-inventory (last visited February 2, 2021).

[6] *See* U.S. Citizenship and Immigration Servs., *Questions and Answers: EB-5 Immigrant Investor Program Visa Availability Approach*, https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/questions-and-answers-eb-5-immigrant-investor-program-visa-availability-approach (last visited February 2, 2021).

[7] *See supra* n. 6.

### C. Allegations and Claims

Plaintiffs are nationals of several countries, including India, Canada, Russia, Brazil, and the United Kingdom. FAC ¶¶ 1-22. Each of them filed Form I-526 petitions as part of the EB-5 visa program process. *See Id.* ¶¶ 95-312. Ten Plaintiffs are currently living in the United States, and of those, one (Gutta) lives in California. *See id.* The remaining Plaintiffs are living in six other countries. *Id.* Although some Plaintiffs invested in the same commercial enterprises within the same regional centers, there is largely no overlap between the petitions. *See id.* Plaintiffs have been waiting for between 12 and 37 months for USCIS to adjudicate their petitions. *See* Docket No. 15, Declaration of Jevechius D. Bernardoni ("Bernardoni Decl."), Ex. A. All Plaintiffs are eligible to immediately apply for lawful permanent resident status upon approval of their petitions. *See* FAC ¶¶ 95-312.

Plaintiffs allege that the processing times for Form I-526 petitions have increased dramatically in recent years. FAC ¶¶ 66-72. They state that 15,122 petitions were adjudicated in Fiscal Year ("FY") 2018 while only 4,673 were adjudicated in FY 2019. *Id.* ¶ 67. In the first quarter of FY 2020, USCIS only adjudicated 455 petitions.[8] *Id.* The slowdown is also reflected in the estimated processing times published by USCIS. *See id.* ¶ 68. In April 2019, the agency reported that processing times for Form I-526 petitions were 20.5 to 27 months. *Id.* In May 2019, the estimate was at 29 to 45.5 months. *Id.* At the beginning of July 2020, USCIS claimed that Form I-526 petitions are adjudicated within 29.5 to 61 months. *Id.* ¶ 71. By the end of that same month, the agency estimated the wait to be between 46 and 74.5 months. *Id.*

Plaintiffs allege that the slowdown in processing times is deliberate and that Defendant "has taken affirmative actions, unknown to the public, to purposefully delay adjudications of EB-5 petitions and applications . . . ." FAC ¶ 331. They assert that USCIS's published processing times are inconsistent with its historical average processing times, which may indicate that "the Form I-526 processing times are artificially inflated to create a potential defense against lawsuits and also

---

[8] *See* U.S. Citizenship and Immigration Servs., *Number of Form I-526, Immigrant Petition by Alien Investor By Fiscal Year, Quarter and Case Status: Fiscal Year 2008 Through Fiscal Year 2020 Quarter 1*,
https://www.uscis.gov/sites/default/files/document/data/I526_performancedata_fy2020_qtr1.pdf (last accessed February 3, 2021).

end" Congressional and public inquiry into the length of time it takes to adjudicate those petitions. *Id.* ¶¶ 72, 331. Plaintiffs also contend that the decrease in number of petitions processed per year and the increase in published processing times "did not correspond with any decrease in resources or significant increase in demand." *Id.* ¶ 331. For example, the Immigrant Investor Program Office ("IPO"), which handles all EB-5 related filings is "authorized by statute to charge fees to cover the cost of adjudicating EB-5 petitions in a reasonable amount of time." *Id.* ¶¶ 49-50. In 2016, the filing fee was raised from $1,500 to $3,675, and raised to $4,015 in October 2020. *Id.* ¶ 50. During that same time period, USCIS received fewer applications than in previous years but it still adjudicated far fewer petitions than it did previously. *See id.* ¶¶ 54-55, 60, 66-67, 324. In addition, USCIS has allegedly expedited some petitions for NCEs but not others and has reassigned staff away from processing applications. *See id.* ¶¶ 69, 321. According to Plaintiffs, these allegations evince a "common policy and practice to withhold and delay adjudication" of Form I-526 petitions. *Id.* ¶ 32.

Plaintiffs allege a single claim for unreasonable delay under the APA. *See* 5 U.S.C. § 706(1).

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). A court will dismiss a party's claim for lack of subject matter jurisdiction "only when the claim is so insubstantial, implausible, foreclosed by prior decisions of th[e Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (citation and quotation marks omitted); *see* Fed. R. Civ. P. 12(b)(1). The challenging party may make a facial or factual attack challenging subject matter jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A facial challenge asserts that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In contrast, a factual attack disputes "the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* at 1039. A factual challenge permits the court to look beyond the complaint, without "presum[ing] the truthfulness of the plaintiff's allegations." *White*,

227 F.3d at 1242 (citation omitted). Even the presence of disputed material facts "will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (citations omitted).

### B.     Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

## III.    DISCUSSION

Defendant moves the court to (1) dismiss the claims of Begur, Das, Khan, and Bansal as moot under Rule 12(b)(1); (2) sever the claims of the remaining plaintiffs as improperly joined; (3) transfer the severed claims of each plaintiff to a district where venue is proper; and (4) dismiss any claims that remain before this court for failure to state a claim under Rule 12(b)(6). As an alternative to the above remedies, Defendant moves to transfer the entire case to the District of Columbia.

### A.     Mootness

Article III of the Constitution limits federal subject matter jurisdiction to "cases" and "controversies." U.S. Const. Art. III. "A case is moot when the issues presented are no longer 'live'

or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000). "The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted." *Feldman v. Bomar*, 518 F.3d 637, 642 (9th Cir. 2008).

Defendant argues that the court should dismiss the claims of Begur, Das, Khan, and Bansal as moot because the I-526 petitions of those plaintiffs have already been adjudicated and approved. Mot. at 10-11; Reply at 2. Plaintiffs respond that those claims are not moot because their claim for relief requests more than just timely adjudication; they also request that USCIS be ordered to "[f]orward any ensuing approval to the National Visa Center." Opp. at 2; FAC at 39. They aver that this relief is necessary because USCIS is taking months to complete what is essentially a ministerial act. FAC ¶¶ 86-94. In reply, Defendant asserts that the relief requested is not ripe for adjudication since, at the time the complaint was filed, none of the petitions at issue had been adjudicated and the court does not have jurisdiction to consider Plaintiffs' request for prospective relief. Defendant also represents that the approved petitions of Begur, Das, and Khan have now been transmitted to the National Visa Center. Reply at 3.

The court agrees that Plaintiffs' claim for relief based USCIS's alleged delay in forwarding approved petitions to the National Visa Center is not ripe for adjudication. A claim is not ripe "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 662 (9th Cir. 2002) (citing *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted)). "The basic rationale of the ripeness doctrine is to prevent courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Id.* (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967) (internal quotation marks omitted)). Ripeness, like standing, is "evaluated at the time the action is commenced." *Local Search Ass'n v. City & Cty. of San Francisco*, No. 11-cv-2776-SBA, 2013 WL 450845, at *3 (N.D. Cal. Feb. 4, 2013). At the time that Plaintiffs filed this action, none of the petitions at issue had been adjudicated. Thus, no Plaintiffs had yet experienced any delay in their approved petition being forwarded to the National Visa Center. Any potential future delay is speculative and therefore not ripe for judicial consideration. Plaintiffs do not present any other

7

reason why the claims of these four Plaintiffs are not moot.

Accordingly, Defendant's motion to dismiss is granted as to the claims of Begur, Das, Khan, and Bansal.

### B. Severance

Plaintiffs may join together in one action if "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20. The requirements for permissive joinder under Rule 20 are liberally construed in order to "promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." *League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977). "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). The court may, at any time and upon just terms, add or drop a party. Fed. R. Civ. P. 21; *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("If the test for permissive joinder is not satisfied, a court, in its discretion, may sever the misjoined parties, so long as no substantial right will be prejudiced by the severance."). District courts are vested with broad discretion in deciding whether to grant severance. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1297 (9th Cir. 2000).

#### 1. Transaction or Occurrence

Defendant argues that Plaintiffs' claims do not arise out of the same transaction or occurrence because each of their Form I-526 petitions "turns on different factual evidence specific to each individual petition, is at a different stage of the adjudications process or at a different place in the inventory management process, relate to (primarily) distinct EB-5 new commercial enterprises—all of which are outside of this district for the plaintiffs whose claims are not moot—and is being processed on its own merits." Mot. at 12. Defendant also contends that the petitions at issue are alleged to have been filed over a period of years, none of them appear to be related to each other, and any delay associated with each petition will have to be evaluated on its own merits. Reply at 5.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The court disagrees. Rule 20's "same transaction" requirement "may comprehend a series of occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Jones v. CertifiedSafety, Inc.*, No. 17-cv-02229-EMC, 2019 WL 758308, at *4 (N.D. Cal. Feb. 20, 2019) (quoting *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974)). In the context of permissive joinder, "the term 'transaction' . . . takes on a flexible meaning; absolute identity of all events is unnecessary." *Smith v. Cty. of Santa Clara*, No. 11-cv-05643-EJD, 2013 WL 3242346, at *4 (N.D. Cal. June 25, 2013) (quoting *Mosley*, 497 F.2d at 1333) (internal quotation marks and alterations omitted). In this case, all the petitions at issue were submitted to one agency under the same visa program and are subject to the same requirements. *See* FAC ¶¶ 56-59; Mot. at 4-5; *see also Ray v. Cuccinelli*, No. 20-cv-06279-JSC, 2020 WL 7353697, at *2 (N.D. Cal. Dec. 15, 2020) ("Simply because Plaintiffs' renewal applications are or were at different points in the adjudication process and rely on evidence specific to each application does not change the fact that each application is evaluated by USCIS using the same criteria."). Additionally, Defendant does not point out any salient differences between the petitions. Although different evidence may be required to evaluate the *merits* of each petition, Plaintiffs are not seeking a merit determination. They simply want USCIS to act. Further, although each Plaintiff experienced a different length of delay, Plaintiffs allege that all delays arose from a "common policy and practice to withhold and delay adjudication" of Form I-526 petitions. FAC ¶¶ 32, 83-84; *see also Najafi v. Pompeo*, No. 19-cv-05782-KAW, 2019 WL 6612222, at *4 (N.D. Cal. Dec. 5, 2019) (finding that plaintiffs met the requirements for permissive joinder "by challenging a common policy"). The FAC lays out specific indicia of such a policy, including an agency-wide slowdown in processing Form I-526 petitions despite an increase in funding, reported processing times that do not reflect historical trends, and reassignment of IPO staff to non-IPO matters. *See* FAC ¶¶ 50-55, 60, 66-67, 72, 324, 331. Thus, despite individual differences among the petitions, all share a "logical relationship" in that the alleged delays stem from the same underlying course of conduct. *See Mosley*, 497 F.2d at 1333.

Defendant's authority to the contrary is readily distinguishable. *Coughlin*, like this case, involved multiple plaintiffs challenging USCIS's delay in adjudicating their immigration petitions. However, at issue in *Coughlin* were at least six different types of applications, petitions, and forms,

9

each of which was subject to different legal standards. *See* 130 F.3d at 1349-51. Here, by contrast, all Plaintiffs are awaiting adjudication of the same type of petition, which will all be evaluated under the same criteria. *See Ray*, 2020 WL 7353697, at *3 n. 3 (distinguishing *Coughlin* on the basis that multiple kinds of immigration petitions were at issue). In *Coughlin*, the Ninth Circuit specifically noted that the plaintiffs "[did] not allege a pattern or policy of delay in dealing with all applications and/or petitions by the INS." 130 F.3d at 1351. Here, Plaintiffs allege that the delays in adjudicating their petitions all arise from a common policy or practice to delay adjudication of the Form I-526 petitions. *See Jamal v. Pompeo*, 2019 WL 7865175, at *3 (C.D. Cal. Nov. 19, 2019) (denying a motion to sever and noting that *Coughlin* did not involve allegations of a common policy of delay); *Al Daraji v. Monica*, 2007 WL 2994608, at *9 (E.D. Pa. Oct. 12, 2007) (finding the "same transaction" requirement met where foreign nationals awaiting adjudication of their naturalization petitions "alleged injury due to a policy or practice of delay on USCIS's part"). Thus, *Coughlin* is not dispositive here.

*Cooper v. Fitzgerald* is also inapposite. *See* 266 F.R.D. 90 (E.D. Pa. 2010). Like *Coughlin*, that case involved two different kinds of immigration applications, which "cuts against joinder under the 'same transaction' prong of Rule 20(a)." *Id.* at 89. Additionally, the differences among the petitions were not just the length of time each had been pending, but also that the petitions had "different reasons associated with delays in their final adjudication." *Id.* For example, one kind of petition required a background check while the other did not. *Id.* In this case, there is only one kind of petition at issue, each petition is evaluated under the same criteria, and Plaintiffs allege that adjudication of all the petitions has been delayed for the same reason. *See Ray*, 2020 WL 7353697, at *2 (distinguishing *Cooper* on the basis that it "concerned different immigration applications with different adjudicative processes").

Because there is only one kind of petition at issue, and because Plaintiffs have adequately alleged that their petitions have all been delayed for a common reason, the court is satisfied that Plaintiffs' claims arise from the same transaction or occurrence.

        **2.     Common Questions of Law or Fact**

The second part of the permissive joinder test is met if "any question of law or fact common

to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1)(B). Commonality "is not a particularly stringent test" and Rule 20 "requires only a single common question, not multiple common questions." *Nguyen v. CTS Elecs. Mfg. Sols. Inc.*, 301 F.R.D. 337, 341 (N.D. Cal. 2014) (citations omitted); *see also Al Daraji v. Monica*, 2007 WL 2994608, at *9 ("The threshold for the commonality requirement is 'very low.'" (citation omitted)).

Defendant argues that Plaintiffs do not present any common questions of law or fact since each of their claims requires a "fact-specific inquiry." Mot. at 12. The court rejects this argument for the same reasons cited above. Plaintiffs raise at least one common question of fact: namely, whether Defendant has a common policy or practice of delaying adjudication of Form I-526 petitions. Additionally, as discussed further below, there is a common question of law as to whether Defendant's adjudication process for Form I-526 petitions is governed by a rule of reason.

Accordingly, the court finds that Plaintiffs have adequately pleaded that there are questions of law and fact common to each of their claims.

### 3. Fairness

Even if plaintiffs satisfy the two Rule 20 requirements, a district court "must examine whether permissive joinder would 'comport with the principles of fundamental fairness' or would result in prejudice to either side." *Coleman*, 232 F.3d at 1296 (quoting *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980)). Defendant argues that if the court does not grant severance, "the Government will be forced to litigate wholly different claims and factual circumstances in the same action, which will prejudice the Government and will not facilitate judicial economy." Mot. at 14; *see also* Reply at 5-6. Defendant contends that if this case proceeds as filed, "the court [will] have to review the underlying facts of 22 separate petitions and analyze the length, reasons for, and impact of any purported delay for each of the 22 plaintiffs." Reply at 6.

Defendant's reasoning is not compelling. As explained above, Plaintiffs allege that the delays in adjudicating their respective petitions arise from the same underlying course of conduct. They further allege that Defendant does not have any rule of reason governing the adjudication of Form I-526 petitions. Those allegations are common to all Plaintiffs and will require the same investigation and proof. Forcing the parties to litigate the same issues in multiple fora across the

11

United States does not serve the interests of judicial economy. Further, as stated previously, Plaintiffs are not asking the court to rule on the merits of their petitions, which obviates some of Defendant's concerns about the fact-specific nature of each petition. In any case, if discovery reveals that Plaintiffs' claims are too individualized to adjudicate together with reasonable efficiency, the court can "at any time and upon just terms, add or drop a party." Fed. R. Civ. P. 21.

For the reasons stated above, the court determines that permitting Plaintiffs to join their claims in one action serves the interest of judicial economy. At this stage, Defendant has not persuasively argued that joinder will prejudice the government. Accordingly, the court denies Defendant's motion to sever.

### C. Failure to State a Claim

The APA permits a district court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The Ninth Circuit has adopted the D.C. Circuit's six-factor test for determining whether agency action has been unreasonably delayed, under which courts consider:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecommunications Research & Action Ctr. v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*"); *see also In re Nat. Res. Def. Council, Inc.*, 956 F.3d 1134, 1138 (9th Cir. 2020). Resolving an unreasonable delay claim is ordinarily "a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003); *see also Addala v. Renaud*, 2021 WL 244951, at *2 (D.D.C. Jan. 25, 2021) ("The *TRAC* analysis is fact-intensive."). Additionally, "grounds for agency delay will often be unknown to plaintiffs at the pleading stage." *Raju v. Cuccinelli*, No. 20-

cv-01386-AGT, 2020 WL 4915773, at *1 (N.D. Cal. Aug. 14, 2020). For these reasons, "unreasonable-delay claims are ordinarily best resolved on or after summary judgment, not on motions to dismiss for failure to state a claim." *Id.*

Defendant cites some cases where courts have dismissed unreasonable delay claims on a motion to dismiss and seems to urge the court to adopt a bright-line rule for what constitutes an unreasonable delay in the APA context. *See* Mot. at 17-18 (citing cases suggesting that delays of four years or less are presumptively reasonable). The court has read and considered those cases but finds them unpersuasive in this case. *Coughlin* and *Cooper* (cited by Defendant) highlight that different kinds of immigration petitions are subject to different legal standards. *Coughlin*, 130 F.3d at 1350-51; *Cooper*, 266 F.R.D. at 90. Correspondingly, the reasons for any delays may differ depending on the specific petition at issue. *See Cooper*, 266 F.R.D. at 89 (noting that the two separate immigration applications at issue "have different reasons associated with delays in their final adjudication"). Adopting a bright-line rule for reasonableness regardless of the kind of petition and interests at issue would undermine the fact-specific nature of the *TRAC* inquiry. *See Raju*, 2020 WL 4915773, at *2; *Keller Wurtz v. United States Citizenship & Immigration Servs.*, No. 20-cv-2163-JCS, 2020 WL 4673949, at *4 (N.D. Cal. Aug. 12, 2020) ("This Court agrees with the general approach that challenges to reasonableness of delay are best considered on an evidentiary record . . . ."); *Gelfer v. Chertoff*, No. 06-cv-06724 WHA, 2007 WL 902382, at *2 (N.D. Cal. Mar. 22, 2007) ("On this motion to dismiss, it is premature to consider the exact sources of the delay to determine whether the delay was actually unreasonable under the circumstances."); *Moghaddam v. Pompeo*, 424 F. Supp. 3d 104, 117 (D.D.C. 2020) ("At the motion to dismiss stage, this Court need not consider whether the agency delay alleged here is unreasonable. Undergoing such a fact-specific inquiry at this stage would be premature.").

The first *TRAC* factor—regarding the government's rule of reason—illustrates the extent of factual disputes in this case. *See In re A Cmty. Voice*, 878 F.3d 779, 786 (9th Cir. 2017) (stating that the first *TRAC* factor is "the most important"). Defendant contends that USCIS's process for adjudicating Form I-526 petitions is governed by a rule of reason: namely, that USCIS first "factor[s] in whether a visa is available or soon to be available and whether the underlying project

13

associated with the petitioner's purported investment has been previously reviewed," and after that, processes petitions on a "first-in, first-out" basis. Mot. at 18. However, Plaintiffs allege that Defendant does not follow its stated rule of reason since it arbitrarily expedites Form I-526 petitions for certain NCEs and not others. *See* FAC ¶ 321. Plaintiffs also allege that USCIS has already approved later-filed Form I-526 petitions for the same projects for other investors. *See id.* ¶¶ 103, 112, 122, 131, 140, 150, 160, 170, 180, 190, 200, 209, 218, 228, 238, 248, 258, 268, 278, 288, 301, 311. Whether these allegations have merit and whether USCIS actually follows its purported rule of reason is a question of fact unsuitable for determination at the pleadings stage.

As another example, Defendant contends that most of the wait times at issue in this case are on the "lower end" of USCIS's most recent estimated processing times for Form I-526 petitions. Mot. at 19. This argument begs the question by assuming that USCIS's average processing time is itself reasonable. *Keller Wurtz*, 2020 WL 4673949, at *4 ("The fact that USCIS takes equally long or longer to adjudicate other applicants' petitions does not in itself show that such delay is reasonable . . . ."). Additionally, Plaintiffs allege that USCIS artificially inflates the published processing times to forestall judicial and Congressional inquiry. *See* FAC ¶ 331. Whether Plaintiffs' allegations have merit, and whether USCIS has a common practice or policy of delaying adjudication of Form I-526 petitions, are issues that can only be resolved on an evidentiary record.

Given the numerous disputed factual issues in this case, the court declines to reach the merits of Plaintiffs' unreasonable delay claim at the pleadings stage. Defendant's Rule 12(b)(6) motion is therefore denied.

### D.     Venue

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). A district court has broad discretion in deciding whether to transfer a case under section 1404(a). *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). Factors the court may consider include the "plaintiff's choice of forum," the "respective parties' contacts with the forum," "the differences in the costs of litigation in the two forums," and "the ease of access to sources of proof,"

among others. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). The plaintiff's choice of venue is "accorded substantial weight" and generally will not be disturbed "unless the convenience and justice factors strongly favor venue elsewhere." *Fabus Corp. v. Asiana Exp. Corp.*, 2001 WL 253185, at *1 (N.D. Cal. 2001). The moving party bears the burden of showing that the proposed transferee court is the more appropriate forum. *Jones*, 211 F.3d at 499.

Defendant argues that the court should exercise its discretion under section 1404(a) to transfer this entire case to the District of Columbia because only one plaintiff resides in this district; the remaining individuals reside in several different states and countries; none of the plaintiffs whose claims are not moot (see *supra*) invested in any NCEs in this district; and all the evidence relevant to this case is held by the IPO in Washington, D.C. Mot. at 23-25. These factors are not compelling. First, although only one plaintiff resides in this district, venue is indisputably proper here. *Californians for Renewable Energy v. United States Envtl. Prot. Agency*, No. 15-cv-3292-SBA, 2018 WL 1586211, at *5 (N.D. Cal. Mar. 30, 2018) ("[T]he clear weight of federal authority holds that venue is proper in a multi-plaintiff case if *any* plaintiff resides in the District." (emphasis in original)). Although the other plaintiffs reside elsewhere, they still chose to litigate in this forum, and "[u]nless the balance tips strongly in favor of the moving defendant, a plaintiff's choice of forum should not be disturbed." *H.L. v. Wal-Mart Stores, Inc.*, 2015 WL 12743600, at *2 (C.D. Cal. Sept. 9, 2015). Second, "although USCIS is located in Washington D.C., the agency regularly litigates APA unreasonable-delay claims throughout the country." *Raju*, 2020 WL 4915773, at *4 (citing cases). Thus, even if it might be somewhat more convenient for USCIS to litigate in the District of Columbia, the agency is still "well equipped to litigate elsewhere." *Id.* On balance, the convenience of the parties weighs against transfer. *See H.L.*, 2015 WL 12743600, at *4 ("A court will not grant a transfer simply because the transferee court is more convenient for defendants. If the transfer would merely switch the inconvenience from defendant to plaintiff, the transfer should not be allowed." (internal quotation marks and citation omitted)). Finally, although some evidence is likely in USCIS's IPO office in the District of Columbia, that evidence is still in Defendant's possession. Defendant does not explain any particular burden in transferring evidence between USCIS's own offices.

1  Accordingly, the court concludes that the interests of justice are not served by transferring this case to the District of Columbia. Defendant's motion to transfer is therefore denied.

**IV. CONCLUSION**

For the reasons stated above, the court grants Defendant's motion to dismiss the claims of Begur, Das, Khan, and Bansal as moot. The motion is otherwise denied.

**IT IS SO ORDERED.**

Dated: February 12, 2021



Donna M. Ryu
United States Magistrate Judge

16